UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**FLOYD L. SEMONS,**

           **Plaintiff,**

v.                                           Case No. 23-CV-1497

**HANNAH UTTER,** *et al.*,

           **Defendants.**

---

### DECISION AND ORDER

---

Plaintiff Floyd L. Semons, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Semons was allowed to proceed on claims against Hannah Utter, Bonnie Gugler, and Dr. Tobias Turon pursuant to the Eighth Amendment for allegedly failing to secure him dental care. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 79.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 10, 44, 73.)

### FACTS

*The Role of Gugler and Utter*

The facts are largely undisputed. Semons arrived at Dodge Correctional Institution on March 16, 2022. (ECF No. 81, ¶ 28.) Defendant Gugler, who was the Health Services Unit (HSU) Manager at Dodge, states that during Semons's stay at Dodge from March 16, 2022, to April 27, 2022, Semons did not submit any Health

Services Requests (HSRs) or information requests seeking dental care. (*Id.*, ¶¶ 29-31.) She did not have any interaction with him. (*Id.*)

On April 27, 2022, Semons transferred to Green Bay Correctional Institution (GBCI). (ECF No. 81, ¶ 28.) At that time, defendant Utter was the Assistant Director of Nursing and HSU Manager at GBCI. (*Id.*, ¶¶ 2, 32.) On December 3, 2022, Utter became the Director of Nursing for the Bureau of Health Services for the Wisconsin Department of Corrections and was no longer the HSU Manager for GBCI. (*Id.*, ¶¶ 2, 35.) While Utter was the HSU Manager, Semons did not submit any HSRs or information requests seeking dental care. (*Id.*, ¶ 37.) Semons asserts that Utter denied him dental floss and sensitive toothpaste on December 15, 2022, but Semons's medical records show it was actually the Special Needs Committee who denied him these supplies. (ECF No. 81, ¶¶ 43-44; ECF No. 93 at 2.) Utter also notes that by December 15, 2022, she was no longer the HSU Manager at GBCI. (ECF No. 81, ¶ 44.)

Both Gugler and Utter state that they did not work with or were involved with the Dental Services Unit and they did not provide dental services. (ECF No. 81, ¶¶ 27, 77-88.) Also, they had no authority to hire or retain dentists employed by the DOC or order that more dentists be hired. (*Id.*, ¶ 80.) It was the Dental Director's responsibility (identified by defendants as non-defendant Dr. Angelo Panos) to ensure that there were a sufficient number of dentists to address the dental needs of DOC prisoners. (*Id.*, ¶¶ 5-7, 72.)

Semons asserts that the "GBCI chain of command specifically lists 'HSU Manager' as the 2nd level supervisor for reporting dental issues for correction." (ECF No.

93 at 1.) However, Semons admits that "HSU managers do not DIRECTLY hire." (*Id.*) Despite having no authority to hire dentists, Semons asserts that Gugler and Utter had "responsibilities related to Dental staffing levels." (*Id.*) He describes these duties as a "responsibility to provide overall administrative support and direction of HSU" and a responsibility to work "with primary care providers in a collaborative manner to provide quality health care." (*Id.*) Semons contends this includes "report preparation of staffing levels" and that Gugler and Utter should have submitted these reports to Dr. Panos. (*Id.*)

Semons is drawing these conclusions from a chart showing the "chain of command" within the DOC system (ECF No. 94-1 at 21) and the Dental Policy the DOC had in place at the time (*Id.* at 23-30). In reviewing this policy, the court notes that most of the responsibility for scheduling dental services and maintaining staff falls on the Dental Director and his staff within the Dental Services Unit and the HSU manager has a very limited role to play. (*Id.*) It is clear from the policy that the HSU manager was not involved in scheduling appointments, hiring dentists, maintaining staffing levels, or conducting reporting on staffing levels. (*Id.*)

*The Role of Dr. Turon*

From April 2022 through April 2023 Dr. Turon was a "floating" dentist who would go to various DOC institutions to help provide dental care where needed. (ECF NO. 81, ¶ 45.) When Dr. Turon would fill in at GBCI, "he mostly did intake exams ([for] inmates transferred into Green Bay) and he responded to Dental Services Requests (DSRs)." (*Id.*, ¶ 46.) It is undisputed that the only involvement Dr. Turon had with Semons's care was

3

responding to Semons's April 17, 2023 DSR. (*Id.*, ¶ 17.) In that DSR, Semons noted that on November 28, 2022, he was informed by dental staff that he "would have a follow up" because he had three cavities. (*Id.*, ¶ 48.) He stated that he had yet to receive treatment and noted that his "teeth worsen." (*Id.*)

Dr. Turon responded to the DSR on April 19, 2023, informing Semons that Semons needed to request services and that follow ups were not automatically scheduled. (ECF No. 81, ¶ 50.) Dr. Turon noted that, upon arrival at GBCI, Semons did not request any dental services. (*ID.*, ¶¶ 52-53.) It appears that Semons's intake paperwork did state that he had tooth decay and that Semons was "[e]ncouraged . . . to put in a DSR for filling." (*Id.*, ¶ 53.)

Dr. Turon informed Semons that he was placed on the "Routine Wait List" for dental care. (ECF No. 81, ¶ 54.) Placement on specific dental waitlists depends on the symptoms described by the prisoner in his DSR. (*Id.*, ¶ 57.) Unless a patient indicates that he could not chew or has severe swelling and pain that would disrupt sleep, they are put on the routine waitlist. (*Id.*) Dr. Turon determined that the routine waitlist was appropriate based on Semons's DSR and information contained in Semons's dental records. (*Id.*, ¶ 58.) Dr. Turon did not fill in at GBCI again after April 19, 2023. (*Id.*, ¶ 62.)

Semons states that having his cavities untreated for several months "presents a serious potentially deadly medical concern." (ECF No. 93 at 2.) It is undisputed that Semons had a dental exam on February 21, 2024, at which he reported that he "had some sensitivity" but could not articulate where the sensitivity was located. (ECF No.

4

81, ¶¶ 68-69.) Although Semons does not dispute that Dr. Turon's involvement was limited to only handling the one DSR, he asserts that Dr. Turon should have inquired into what Semons meant by "teeth worsening" and should have put him on the "urgent" wait list. (ECF No. 93 at 2.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of

5

Case 2:23-cv-01497-WED    Filed 05/02/25    Page 5 of 11    Document 107

fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Semons claims that Gugler and Utter violated his Eighth Amendment rights when they failed to ensure that Dodge and GBCI had a sufficient number of dentists to treat prisoners' dental needs, which failure caused a significant delay in him receiving treatment. He also claims Utter violated his Eighth Amendment rights when she denied him sensitive toothpaste and dental floss. He claims that Dr. Turon was deliberately indifferent to his dental needs when he did not follow up with Semons to determine if urgent care was needed.

*Claims against Gugler and Utter*

Semons fails to demonstrate that Gugler and Utter were responsible for the dental staffing shortage that caused a delay in him getting dental treatment. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Even taking the facts in the light most favorable to Semons, no reasonable factfinder could conclude that either Gugler or Utter were responsible for the dental staff shortage. At most they had secondary responsibility for "reporting dental issues for correction." (ECF No. 93 at 1.) The policy does not impose a responsibility to report dental staff shortages as Semons

6

contends. Instead, the policy simply describes the HSU staff's responsibilities when a prisoner has a dental issue and incorrectly submits it to the HSU instead of the DSU. Even if the policy imposed upon the HSU manager responsibility for assisting in addressing dental staff shortages, the failure to do so would only result in a policy, not a constitutional, violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 only "protects plaintiffs from constitutional violations, not violations of state laws, or . . . departmental regulations.").

The DOC chose to have a separate Dental Services Unit dedicated to dental health issues, complete with its own Dental Director, who is responsible for hiring dental staff and for dental staff shortages. The HSU and the HSU Manager are not responsible for dental health issues except in very limited circumstances, such as when an inmate submits a dental request to the HSU by mistake. "Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009). Gugler and Utter cannot be held liable for failing to do something that was not their responsibility.[1] Summary judgment on this claim is granted in their favor.

As for Semons's claim that Utter denied him dental floss and sensitive toothpaste, the medical records indicate that the Special Needs Committee, not Utter, was

---

[1] The Court notes that, after the defendants' motion for summary judgment was fully briefed, Semons attempted to amend his complaint to add Dr. Panos as a defendant. However, Semons did not follow Fed. R. Civ. P. 15(a) and Civil L.R. 15, which require that he submit a proposed amended complaint with his motion. The court also found that allowing Semons to amend the complaint at this stage of the case would be unduly prejudicial to the defendants. (ECF No. 102.) The court informed Semons that he is free to file another suit against Dr. Panos, subject to the applicable statute of limitations.

responsible for that decision. Even if Utter was responsible, Semons has not sufficiently demonstrated that the denial of these dental supplies rises to the level of a constitutional violation. Semons is required to show that Utter's decision was so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). Semons has not introduced any evidence demonstrating that the denial of floss or sensitive toothpaste was contrary to Utter's professional judgment. No reasonable factfinder could conclude that Utter was deliberately indifferent to Semons's dental health needs. Summary judgment is granted in her favor.

*Claims against Dr. Turon*

To find a medical professional was deliberately indifferent to health needs under the Eighth Amendment, a plaintiff must demonstrate four elements. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). First, "there must be a risk of harm to the plaintiff that is so objectively serious as to be 'excessive' (and that risk must in fact materialize)." *Id.* Second, "the defendant must 'know' of the risk (put differently, he must possess subjective awareness that the risk exists)." *Id.* Third, "the defendant's response to the risk must be so inadequate as to constitute 'disregard' of (or deliberate indifference toward) the risk." *Id.* Finally, "the plaintiff must prove that the defendant's deliberate indifference actually *caused* his injury." *Id.* (citing *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)).

The parties do not contest that cavities are an objectively serious medical need. Also, the DSR and dental records demonstrate that Dr. Turon was aware that Semons had cavities. However, even taking the facts in a light most favorable to Semons, no reasonable factfinder could conclude that Dr. Turon's response to Semons's DSR constituted deliberate indifference.

Dr. Turon did not delay in addressing Semons's DSR. Taking the information available to him, including the information Semons stated in the DSR and Semons's dental records, Dr. Turon exercised his professional judgment to determine that Semons's need warranted placement on the routine waitlist. "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Pyles*, 771 F.3d at 409 (citations omitted). Semons has presented no evidence that Dr. Turon's decision was "blatantly inappropriate." *Id.* At most, Semons states that Dr. Turon should have followed up for clarification on his DSR, but such a failure would amount to mere negligence, which is insufficient to establish a constitutional violation. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Semons also states that Dr. Turon should have put him on the urgent waitlist. However, "[d]isagreement between a prisoner and his doctor . . . about the proper course of treatment is generally insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409. Because no reasonable factfinder could find that Dr. Turon was deliberately indifferent to Semons's dental needs, summary judgment is granted in his favor.

9

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. Although the defendants also argued that they were entitled to qualified immunity, because the court found in their favor on the merits it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 79) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under

Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 2nd day of May, 2025.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge